**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| RILLA JEFFERSON, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:20-cv-02576-JPM-tmp |
| v. | ) ) | |
| GENERAL MOTORS, LLC, | ) ) | |
| Defendant. | ) ) | |

**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

**AND**

**GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Before the Court is the Defendant General Motors, LLC's ("GM" or "Defendant") Motion for Summary Judgement, filed on November 22, 2022.  (ECF No. 75.)  Plaintiff Rilla Jefferson ("Plaintiff" or "Ms. Jefferson") filed a Response in Opposition on January 10, 2023.  (ECF No. 79.)  Defendant filed a Reply on January 31, 2023.  (ECF No. 81.)

Also before the Court is Plaintiff's Motion to Certify Class, filed on November 2, 2022. (ECF No. 62.)  Defendant filed a Response in Opposition on December 9, 2022.  (ECF No. 76.) Plaintiff filed a Reply on January 10, 2023.  (ECF No. 80.)

For the reasons set forth below, Defendant's Motion for Summary Judgment (ECF No. 75) is **GRANTED IN PART**.  Plaintiff's Motion for Class Certification (ECF No. 62) is **GRANTED.**

## I.   BACKGROUND

### A. *Factual Background*

#### a.   *Undisputed Facts*

Plaintiff is an adult resident of Memphis, Tennessee.  (ECF No. 75-2 ¶ 1; ECF No. 79-1 ¶ 1.)  Defendant is a Delaware Corporation that markets, manufactures, sells, and provides a limited warranty for motor vehicles, including the GMC Acadia.  (ECF No. 75-2 ¶¶ 2–3; ECF No. 79-1 ¶¶ 2–3.)  Plaintiff purchased a new 2017 GMC Acadia (the "Subject Vehicle") for $30,270 from Sunrise Buick (the "Dealership") in Bartlett, Tennessee on October 25, 2017.  (ECF No. 75-2 ¶¶ 4–5; ECF No. 79-1 ¶¶ 4–5.)

The Subject Vehicle was sold with GM's "New Vehicle Limited Warranty," providing "repair and replace" coverage for 3 years or 36,000 miles, whichever came first.  (ECF No. 75-2 ¶ 7; ECF No. 79-1 ¶ 7.)  The text of the New Vehicle Limited Warranty is undisputed.  (ECF No. 75-2 ¶ 10; ECF No. 79-1 ¶ 10.)  The relevant text is as follows:

> GMC will provide for repairs to the vehicle during the warranty period in accordance with the following terms, conditions, and limitations.
>
> **Warranty Applies**
>
> This warranty is for GMC vehicles registered in the United States and normally operated in the United States and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> **Repairs Covered**
>
> The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new, remanufactured, or refurbished parts. . .
>
> **Obtaining Repairs**
>
> To obtain warranty repairs, take the vehicle to a GMC dealer facility within the warranty period and request the needed repairs. Reasonable time must be allowed for the dealer to perform necessary repairs.
>
> (ECF No. 75-6 at PageID 941.)

2

Plaintiff alleges that she began to experience a Shift-to-Park ("STP") defect shortly after she purchased the subject vehicle.  (ECF No. 75-2 ¶ 12; ECF No. 79-1 ¶ 12.)  "Ms. Jefferson testified that when she put the Subject Vehicle in the park position and tried to turn the vehicle off, the Subject Vehicle would not turn off and a message appeared on the dashboard [that stated] 'Shift to Park' even though the vehicle was in the park position."  (ECF No. 75-2 ¶ 14; ECF No. 79-1 ¶ 14.)  When the STP defect manifested, the vehicle would not stop running.  (ECF No. 79-1 at PageID 1253–54; ECF No. 81-1 ¶ 5.)  "When Ms. Jefferson experienced the STP condition, she had to jiggle the shifter from park to neutral or drive and then put the shifter back in the park position."  (ECF No. 75-2 ¶ 15; ECF No. 79-1 ¶ 15.)  "The Subject Vehicle never rolled away [and] Ms. Jefferson was always able to start and turn off the Subject Vehicle."  (ECF No. 75-2 ¶ 18; ECF No. 79-1 ¶ 18.)  Plaintiff drove the Subject Vehicle regularly between the time when she purchased it in October of 2017 and when she traded in the vehicle in February of 2021.  (ECF No. 75-2 ¶ 19; ECF No. 79-1 ¶ 19.)  It is undisputed that Plaintiff testified that she complained to the Dealership about the STP defect, and that Repair Orders for the Subject Vehicle do not reflect these complaints.  (ECF No. 75-2 ¶¶ 20–21; ECF No. 79-1 ¶¶ 20–21.)

Plaintiff testified in her deposition that she presented the Subject Vehicle to GM dealers and described the STP defect, but GM and its dealers failed to repair the STP defect.[1]  (ECF No. 79-1 at PageID 1254; ECF No. 81-1 ¶ 6.)  Ms. Jefferson testified that she took her vehicle to the Dealership on or about March of 2019, when the Dealership informed her that her warranty had

_____

[1] Defendant describes this fact as "Disputed" in its Response to Plaintiff's Statement of Additional Facts.  (ECF No. 81-1 ¶ 6.)  Plaintiff cites certain sections of the transcript of Rilla Jefferson as supporting her assertion that this is an undisputed fact.  (ECF No. 79-1 at PageID 1254.)  Defendant cites identical sections of the transcript of the deposition of Rilla Jefferson in arguing that this is a disputed fact.  (ECF No. 81-1 ¶ 6.)  The Court finds Defendant's assertion that this fact is disputed as non-responsive, as Ms. Jefferson clearly asserts in the cited sections of her deposition that she informed the Dealership of the STP defect.  (See, e.g., ECF No. 75-4 at PageID 921.)  Defendant also described the fact that Plaintiff testified that she complained about the STP defect to the Dealership as undisputed in its own Statement of Undisputed Facts.  (ECF No. 75-2 ¶ 20.)

expired and that she would be required to pay $144 for an inspection.  (ECF No. 75-2 ¶¶ 22–23; ECF No. 79-1 ¶¶ 22–23.)  At that time, her vehicle had been driven at least 48,891 miles.  (ECF No. 75-2 ¶ 22; ECF No. 79-1 ¶ 22.)  She did not have the vehicle inspected or complain about the STP defect to the Dealership or any other dealership after March of 2019.  (ECF No. 75-2 ¶ 25; ECF No. 79-1 ¶ 25.)  Plaintiff traded in the Subject Vehicle to the Dealership for another vehicle in February of 2021.  (ECF No. 75-2 ¶ 27; ECF No. 79-1 ¶ 27.)  Plaintiff experienced the STP defect until she agreed to trade in the Subject Vehicle.[2]  (ECF No. 79-1 at PageID 1254; ECF No. 81-1 ¶ 7.)

Plaintiff served Defendant with the Report and Expert Opinion of Darren Manzari on March 4, 2022.  (ECF No. 75-2 ¶ 29; ECF No. 79-1 ¶ 29; see also ECF No. 75-8.)  Mr. Manzari opined that nearly all 2017-18 GMC Acadia vehicles (the "Class Vehicles") have experienced or will experience the STP defect.  (ECF No. 75-2 ¶ 32; ECF No. 79-1 ¶ 32.)  He is of the opinion that the defect is the result of the buildup of silicone dioxide or glass on the park switch contacts. (ECF No. 75-2 ¶ 32; ECF No. 79-1 ¶ 32.)  These components build up in the shifter assembly over time because the park switch has organic silicon within the switch.  (ECF No. 79-1 at PageID 1254–55; ECF No. 81-1 ¶ 11.)  Organic silicon decomposes into its base elements when the switch opens and closes, the base elements react to form silicon dioxide in the presence of heat, and the resultant silicon dioxide attaches to the surfaces of the switch contacts.  (ECF No. 79-1 at PageID 1254–55; ECF No. 81-1 ¶ 11.)  There are multiple sources of silicon within the shifter assembly including silicon originating within the switch itself during manufacture, silicon mold release used during the manufacture of rubber dampers, and silicon lubricant that was used on the shifter.  (ECF

---

[2] Defendant describes this fact as "Disputed to the extent Plaintiff mischaracterizes Ms. Jefferson's testimony" in its Response to Plaintiff's Statement of Additional Facts.  (ECF No. 81-1 ¶ 7.)  Defendant offers no citation supporting its assertion that Plaintiff has mischaracterized the deposition of Ms. Jefferson.  (Id.; see also L.R. 56.1(b).)  The Court finds Defendant's assertion that this fact is disputed as non-responsive.

No. 79-1 at PageID 1255; ECF No. 81-1 ¶ 12–13.)  GM contends that it was not aware that its supplier used a silicon lubricant within the micro switch in the Class Vehicles.  (ECF No. 79-1 at PageID 1256; ECF No. 81-1 ¶ 19.)  Mr. Manzari is of the opinion that the cost of repairing the STP defect is $700, and that this is an appropriate proxy for measuring the diminished value of Class Vehicles stemming from the STP defect.  (ECF No. 79-1 at PageID 1254; ECF No. 81-1 ¶ 9.)

### b.  Allegations

Plaintiff brings this action asserting breach of express warranty under Tennessee law and the Magnuson-Moss Warranty Act, and breach of contract under Tennessee law.  (ECF No. 1 ¶¶ 55–70, 78–87.)  Plaintiff asserts that GM "is well aware of the [STP] defect."  (ECF No. 1 ¶ 22.)  She describes the defect as "a safety risk" as it can drain a car battery.  (ECF No. 63 at PageID 470.)  Plaintiff argues that the shifter is not an expected replacement part and should last the lifetime of a vehicle.  (Id. at PageID 470–71.)

Plaintiff argues that GM used the wrong tool to identify the root cause of the STP defect, and as a result Defendant took an unreasonably long time to identify the cause of the defect and develop a repair.  (ECF No. 63 at PageID 472–73.)  She argues that Defendant only identified the defect in May of 2018.  (Id. at PageID 473.)  Plaintiff contends that Defendant devised a way to fix the STP defect more than two years after it began selling the Class Vehicles.  (ECF No. 1 ¶ 24.)  She argues that Defendant's first attempt to develop a solution to the problem was a "band-aid," as it involved simply replacing the defective shifter with an equally defective shifter.  (ECF No. 63 at PageID 474.)  She contends that Defendant knew the problem would persist or reoccur following the application of this initial repair.  (Id.)  She argues that Defendant then developed a silicon-free repair to the Class Vehicles in 2019 but failed to use it.  (Id. at PageID 475.)  Plaintiff argues that Defendant began to utilize an effective repair to the STP defect only in December of

2020, "after the warranty period had already expired for many Class Vehicle owners." (Id. at PageID 475–76.)

Plaintiff alleges that all class vehicles sold or leased were accompanied by Defendant's New Vehicle Limited Warranty. (ECF No. 1 ¶ 28.) Plaintiff brings claims for breach of contract, breach of express warranty, and breach of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (Id. ¶ 5; see also ECF No. 27 (dismissing Plaintiff's claims for implied warranty and striking Plaintiff's demand for punitive damages.))

Plaintiff alleges that GM's data shows that 3,341 of the Class Vehicle have been sold in Tennessee, 1,351 of those vehicles have sought warranty repairs for the STP defect, and 784 vehicle owners have paid for repairs to the shifter assembly out of pocket. (ECF No. 63 at PageID 471–72.) Plaintiff also alleges that those numbers will continue to increase over time because the STP Defect gets worse as an affected vehicle ages. (Id.)

### B. Procedural History

The Complaint in the instant case was filed in this Court on August 7, 2020. (ECF No. 1.) Defendant filed a Motion to Dismiss on October 29, 2020. (ECF No. 15.) The Court granted that Motion in part, striking Plaintiff's request for punitive damages and dismissing her implied warranty of merchantability claim. (ECF No. 27.) Defendant filed an Answer to Plaintiff's Complaint on October 18, 2021. (ECF No. 43.)

The Parties filed a Joint Motion to Stay the instant case on May 25, 2022. (ECF No. 51.) The Parties moved this Court to stay this case for 90 days, or until the resolution of the summary judgment and class certification motions which was then outstanding in Napoli-Bosse v. General Motors, LLC, No. 18-cv-1720-MPS (D. Conn). (Id. at PageID 390.) The motions in Napoli-Bosse were resolved on August 22, 2022. See Napoli-Bosse v. Gen. Motors LLC, No. 3:18-CV-1720

(MPS), 2022 WL 3585769 (D. Conn. Aug. 22, 2022).  The Parties jointly moved the Court to lift

the stay in the instant case on September 14, 2022.  (ECF No. 54.)  The Court granted the Parties'

Joint Motion to Lift Stay on September 15, 2022.  (ECF No. 55.)

Plaintiff filed a Motion to Certify Class on November 2, 2022.  (ECF No. 62.)  Plaintiff's

Motion was filed with a Memorandum of Law (ECF No. 62-1), the Declaration of Sergei Lemberg

(ECF No. 62-2), and the Declaration of Joshua Markovitz. (ECF No. 62-3.)  Plaintiff also filed 23

exhibits along with her Motion.  (ECF Nos. 67–74.)  Plaintiff additionally filed unredacted, sealed

copies of her Memorandum of Law and of Exhibit 1.  (ECF Nos. 63–64.)  Defendant filed a

Response on December 9, 2022.  (ECF No. 76.)  That Response was filed with the Declaration of

Joseph J. Orzano (ECF No. 76-1), excerpts from the deposition of Mike van Camp (ECF No. 76-

2), excerpts from the deposition of Steven W. Gornick (ECF No. 76-3), excerpts from the

deposition of Tom Burlingame (ECF No. 76-4), the Expert Report of Steven W. Gornick (ECF

No. 76-5), excerpts from the deposition of Rilla Jefferson (ECF No. 76-6), Ms. Jefferson's Repair

Orders (ECF No. 76-7), excerpts from the deposition of Darren Manzari (ECF No. 76-8), and the

Complaint in the case Napoli-Bosse v. General Motors, LLC, No. 18-cv-1720-MPS (D. Conn).

(ECF No. 76-8.)  Plaintiff filed a Reply on January 10, 2023.  (ECF No. 80.)

Defendant filed a Motion for Summary Judgment on November 22, 2022.  (ECF No. 75.)

Defendant's Motion was filed with a Memorandum of Law in Support (ECF No. 75-1), a Statement

of Undisputed Facts (ECF No. 75-2), the Declaration of Joseph J. Orzano (ECF No. 75-3), excerpts

from the deposition of Rilla Jefferson (ECF No. 75-4), a redacted Buyer's Agreement and Bill of

Sale (ECF No. 75-5), a copy of GM's New Vehicle Limited Warranty (ECF No. 75-6), Ms.

Jefferson's Repair Orders (ECF No. 75-7), the Expert Report of Darren Manzari (ECF No. 75-8),

excerpts from the deposition of Darren Manzari (ECF No. 75-9), Ms. Jefferson's Initial

Disclosures (ECF No. 75-10), Ms. Jefferson's Supplemental Disclosures (ECF No. 75-11), and Ms. Jefferson's Responses to Defendant's Interrogatories. (ECF No. 75-12.) Plaintiff filed a Response on January 10, 2023. (ECF No. 79.) Plaintiff's Response was filed with a Response to Defendant's Statement of Undisputed Facts (ECF No. 79-1), the Declaration of Joshua Markovitz (ECF No. 79-2), an email to Plaintiff's counsel from Mike Hirnyk (ECF No. 79-3), excerpts from the deposition of Mike van Camp (ECF No. 79-4), excerpts from the deposition of Darren Manzari (ECF No. 79-5), and excerpts from the deposition of Rilla Jefferson (ECF No. 79-6). Defendant filed a Reply on January 31, 2023. (ECF No. 81.) Defendant's Reply was filed with GM's Response to Plaintiff's Statement of Additional Facts. (ECF No. 81-1.)

## II.   LEGAL STANDARD

### A. *Summary Judgment*

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."

Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.  "When

the non-moving party fails to make a sufficient showing of an essential element of his case on

which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law

and summary judgment is proper."  Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d

911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012)

(en banc)) (internal quotation marks omitted).

 In order to "show that a fact is, or is not, genuinely disputed," a party must do so by "citing

to particular parts of materials in the record," "showing that the materials cited do not establish the

absence or presence of a genuine dispute," or showing "that an adverse party cannot produce

admissible evidence to support the fact."  L.R. 56.1(b)(3); Bruederle, 687 F.3d at 776 (alterations

in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 (quoting

Celotex, 477 U.S. at 325) ("To support its motion, the moving party may show 'that there is an

absence of evidence to support the nonmoving party's case.'").  "Credibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge."  Martinez, 703 F.3d at 914 (alteration in original) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  "The court need consider only the

cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  "[T]he

district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue

of material fact.'"  Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th

Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008),

abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

 The decisive "question is whether 'the evidence presents a sufficient disagreement to

require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a

matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251–52). Summary judgment "'shall be entered' against the non-moving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" Rachells v. Cingular Wireless Emp. Servs., LLC, No. 1:08CV02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990)). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 251). "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty Lobby, 477 U.S. at 247–254; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." Rachells, 2012 WL 3648835 at *2 (quoting Thomas v. Christ Hosp. & Med. Ctr., 328 F.3d 890, 894 (7th Cir. 2003)). Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient. Mitchell, 964 F.2d at 584–85.

## B. Class Certification

"[T]he 'class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig., 722 F.3d 838, 850 (6th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 346 (2011) (internal quotation marks omitted). Federal Rule of Civil Procedure 23 sets out

the requirements for obtaining class certification, ensuring that "class claims [are limited] to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members." Id. (citing Dukes, 564 U.S. at 346); see also Fed. R. Civ. P. 23. "The plaintiffs carry the burden to prove that the class certification prerequisites are met" and "the plaintiffs, as class representatives, [are] required to establish that they possess the same interest and suffered the same injury as the class members they seek to represent." Id. (citing In re Am. Med. Sys., Inc., 75 F.3d 1069, 1078–79 (6th Cir. 1996)).

### a. Rule 23(a) Requirements

Under Federal Rule of Civil Procedure 23(a), the Court may certify a class only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "These four requirements – numerosity, commonality, typicality, and adequate representation – serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members." In re Whirlpool Corp., 722 F.3d at 850 (citing Dukes, 564 U.S. at 346. "[I]f Plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23." 7A Charles Alan Wright, et al., Federal Practice and Procedure § 1759, at 130-31 (3d ed. 2005). "The Supreme Court has required district courts to conduct a 'rigorous analysis' into whether the prerequisites of Rule 23 are met before certifying a class." In re Am. Med. Sys., Inc., 75 F.3d 1069, 1078–79 (6th Cir. 1996) (citing General Tel. Co. v. Falcon, 457 U.S. 147, 161, (1982)). "There is nothing

11

unusual about 'touching aspects of the merits in order to resolve preliminary matters . . . [because doing so is] a familiar feature of litigation.'" In re Whirlpool Corp., 722 F.3d at 851 (citing Dukes, 564 U.S. at 351–52).  However, "Rule 23 does not require a district court, in deciding whether to certify a class, to inquire into the merits of the plaintiff's suit." Beattie v. CenturyTel, Inc., 511 F.3d 554, 560 (6th Cir. 2007).  "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Conn. Retirement Plans & Trust Funds, 568 U.S. 455, 466 (2013).

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The Sixth Circuit has held that there is "no specific number" that will or will not render joinder impracticable. In re Am. Med. Sys., Inc., 75 F.3d at 1079.  "[W]hile there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." Daffin v. Ford Motor Co., 458, F.3d 549, 552 (6th Cir. 2006) (citing In re Am. Med. Sys., 75 F.3d at 1079).

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "The interests and claims of the various Plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 424 (6th Cir. 1998) (quoting Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (6th Cir. 1993)).

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting

the class, so that the court may properly attribute a collective nature to the challenged conduct." Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998) (citing In re Am. Med. Sys., 75 F.3d at 1082). A representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." In re Am. Med. Sys., 75 F.3d at 1082. A class representative is not typical "when a plaintiff can prove his own claim but not 'necessarily have proved anybody else's claim.'" Beattie, 511 F.3d at 561 (quoting Sprague, 133 F.3d at 399). "[A] representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." Id.

Rule 23(a)(4) requires that the representative parties demonstrate that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For a class representative to be deemed adequate, "(1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." Senter v. Gen. Motors Corp., 532 F.2d 511, 524-25 (6th Cir. 1976). The first step of this analysis "serves to uncover conflicts of interest between named parties and the class they seek to represent." Gooch v. Life Invs. Ins. Co. of Am., 672 F.3d 402, 429 (6th Cir. 2012) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997)).

### b. Rule 23(b)(3) Requirements

In addition to the prerequisites of Rule 23(a), a plaintiff must also show that her suit falls within one of the three types of class actions under Federal Rule of Civil Procedure 23(b). Beattie, 511 F.3d at 560. In this case, Plaintiff seeks certification under Rule 23(b)(3), which requires that district courts find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for the fair and efficient adjudication of the controversy." Fed.

R. Civ. P. 23(b)(3).  Matters pertinent to these findings may include

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

> Id.

"To meet the predominance requirement, a plaintiff must establish that issues subject to

generalized proof and applicable to the class as a whole predominate over those issues that are

subject to only individualized proof."  Randleman v. Fidelity Nat'l Title Ins. Co., 646 F.3d 347,

353 (6th Cir. 2011) (citation omitted).

> In evaluating the superiority requirement,

> the district court should consider the difficulties of managing a class action. The district court should also compare other means of disposing of the suit to determine if a class action is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court. Additionally, the court should consider the value of individual damage awards, as small awards weigh in favor of class suits.

Martin v. Behr Dayton Thermal Prod. LLC, 896 F.3d 405, 415–16 (6th Cir. 2018) (citing

Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich., 654 F.3d 618, 630–31 (6th

Cir. 2011)).

Finally, "[b]efore a court may certify a class pursuant to Rule 23, the class definition must

be sufficiently definite so that it is administratively feasible for the court to determine whether a

particular individual is a member of the proposed class."  Young v. Nationwide Mut. Ins. Co., 693

F.3d 532, 537–38 (6th Cir. 2012) (internal punctuation and citations omitted).  This is the "implied

ascertainability requirement" contained within Fed. R. Civ. P. 23(b)(3).   "A proposed class may

be deemed overly broad if it would include members who have not suffered harm at the hands of the defendant." Faralli v. Hair Today, Gone Tomorrow, 1:06-CV-504, 2007 WL 120664, at *6 (N.D. Ohio Jan. 10, 2007) (quoting Chaz Concrete Co. v. Codell, 2006 WL 2453302, at *6 (E.D. Ky. Aug. 23, 2006)).  Moreover, the proposed class may not be a "fail-safe class," "that is, a class that cannot be defined until the case is resolved on its merits."  Young, 693 F.3d at 538.

## III.   ANALYSIS

The Court will first analyze Defendant's Motion for Summary Judgment.  (ECF No. 75.) Finding that Plaintiff's claims may proceed, the Court will then analyze Plaintiff's Motion for Class Certification.  (ECF No. 62.)

### A.  Summary Judgment

#### a.  There is privity of contract under Tennessee Law between Plaintiff and Defendant

Defendant argues that the instant Motion for Summary Judgment should be granted because "privity of contract is required" to maintain a breach of contract claim.  (ECF No. 75-1 at PageID 871.)  Defendant contends that "there is no privity of contract between a vehicle purchaser and a vehicle manufacturer.  (Id. at PageID 872.)  It is undisputed that Plaintiff "did not purchase the Subject Vehicle from GM" but from the Dealership.  (Id. at PageID 873; see also ECF No. 79-1 ¶ 4.)

Defendant similarly argues that "[b]ecause GM did not contract with [Plaintiff] to sell her the Subject Vehicle, GM is not a 'seller'" under Tenn. Code Ann. § 47-2-313.  (ECF No. 75-1 at PageID 873.)  Contractual privity between a buyer and a seller is required to bring an express warranty claim in Tennessee.  Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc., 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003) ("[A] plaintiff may not maintain a claim for purely economic losses absent contractual privity with the party charged with responsibility for those

losses.").

Under Tennessee law, "privity may be established . . . upon proof of the issuance of a limited warranty." Francis v. Gen. Motors, LLC, 504 F. Supp. 3d 659, 677 (E.D. Mich. 2020) (citing Bishop v. DeLaval Inc., 466 F. Supp. 3d 1016 (W.D. Mo. 2020)) (applying Tennessee law); see also Williams v. BMW of N. Am., LLC, 514 F. Supp. 3d 1036, 1039-40 (E.D. Tenn. 2021).  It is undisputed that Defendant issued Plaintiff its New Vehicle Limited Warranty.  (ECF No. 79-1 ¶ 7.)  The Court has already held that the New Vehicle Limited Warranty qualifies as an express warranty for the purpose of a breach of express warranty claim.  (ECF No. 27 at PageID 280 (citing Watson & Son Landscaping, Partners v. Power Equip. Co., No. W2002-00136-COA-R3-CV, 2003 WL 22326967, at *4 (Tenn. Ct. App. Apr. 29, 2003); Queen City Pastry, LLC v. Bakery Tech. Enters., LLC, No. M2017-001120COA-R3-CV, 2018 WL 3854912, at *2–3 (Tenn. Ct. App. Aug. 14, 2018)).)  Defendant is not exempted from Tenn. Code Ann. § 47-2-313 "purely by virtue of being a manufacturer that did not sell its product directly to [Plaintiff]," as it issued Plaintiff an express warranty.  Venture Express, Inc. v. Vanguard Nat'l Trailer Corp., No. 3:19-CV-00657, 2021 WL 6332791, at *4 (M.D. Tenn. Feb. 10, 2021).  Defendant's issuance of the New Vehicle Limited Warranty to Plaintiff is sufficient to establish contractual privity under Tennessee Law. See Francis, 504 F. Supp. 3d at 677.

As Defendant and Plaintiff were in privity of contract, Plaintiff may maintain her breach of contract claim.

### b.  The defect is covered by Defendant's New Vehicle Limited Warranty

Defendant argues that its warranty did not cover the STP defect.  (ECF No. 75-1 at PageID 875.)  Defendant's warranty, by its express terms, only covers repairs to correct vehicle defects "due to materials or workmanship" that occur during the warranty period.  (ECF No. 75-6 at PageID 941.)  Defendant asserts that this language means that the warranty does not cover design

defects.  (ECF No. 75-1 at PageID 875.)  Defendant cites cases from district courts in this circuit and others that they contend have held that GM's New Vehicle Limited Warranty does not cover design defects.  (Id. at PageID 875–76.)

Plaintiff counters that Defendant's New Vehicle Limited Warranty does, in fact, cover both design and manufacturing defects, and that it covers the STP defect.  (ECF No. 79 at PageID 1229.) Plaintiff contends that Defendant's warranty, by its express terms, covers "repairs to correct any vehicle defect" except for "slight noise, vibrations, or other normal characteristics of the vehicle" without regard for whether the defect is in manufacturing or design.  (ECF No. 75-6 at PageID 941.)  Plaintiff cites cases from district courts in this circuit and others that they contend have held that GM's New Vehicle Limited Warranty does cover design defects.  (ECF No. 79 at PageID 1229–30.)

The language of Defendant's New Vehicle Limited Warranty has been contested across many cases, so much so that both Parties are able to cite cases from the Eastern District of Michigan which came to apparently opposite conclusions regarding the scope of Defendant's Limited Warranty Coverage in the year 2019.  Compare Mantanky v. Gen. Motors LLC, 370 F. Supp. 3d 772, 788 (E.D. Mich. 2019) ("GM's warranty only covers defects in material or workmanship, not design defects") to McKee v. Gen. Motors LLC, 376 F. Supp. 3d 751, 759 (E.D. Mich. 2019) (holding that GM's New Vehicle Limited Warranty covers any vehicle defect not expressly disclaimed, including design defects).

Plaintiff's arguments have merit. GM offers caselaw in support of its arguments that has been thoroughly analyzed and rejected in cases comparable to the instant case.  See McKee, 376 F. Supp. 3d at 759 ("GM points to several non-binding district court decisions that have adopted GM's argument. It then asks the Court to adopt a misconstruction of the Warranty based on the

17

other courts' precedent.").

Defendant claims that <u>Mantaky</u> supports their argument because that case dismissed a "Magnuson-Moss claim because GM's warranty only covers defects in material or workmanship, not design defects." (ECF No. 75-1 at PageID 875; <u>see also</u> <u>Mantaky</u>, 370 F. Supp. 3d. 772.) That case actually rejected the plaintiff's Magnuson-Moss claim because that plaintiff did not respond to GM's assertion that design defects were not covered by the New Vehicle Limited Warranty. <u>Mantaky</u>, 370 F. Supp. 3d at 788. Instead, that plaintiff argued unavailingly that they pled sufficient facts to "sustain a [Magnuson-Moss] claim based on a breach of implied warranty" in their complaint, even though they brought their claim on an express warranty theory. <u>Id.</u>

Defendant claims that <u>Sloan v. General Motors</u> supports their argument. (ECF No. 75-1 at PageID 875; <u>see also</u> <u>Sloan v. Gen. Motors LLC</u>, No. 16-CV-07244-EMC, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017).) That case held that GM's New Vehicle Limited Warranted did not cover design defects as "the overwhelming weight of state law authority holds that design defects are not covered under similar warranties." <u>Sloan</u>, 2017 WL 3283998, at *8. As noted by the <u>McKee</u> court, "the cases that <u>Sloan</u> relied on addressed warranties that expressly limited their scope to manufacturing defects." <u>McKee</u>, 376 F. Supp. 3d at 758. Because the warranty in the instant case is not limited solely to manufacturing defects, "GM's Warranty is not similar to the warranties in the five cases relied on by <u>Sloan</u>." <u>Id.</u>

Defendant claims that <u>In re Motors Liquidation Co.</u> supports their argument. (ECF No. 75-1 at PageID 876; <u>see also</u> <u>In re Motors Liquidation Co.</u>, 2013 WL 620281 (Bankr. S.D.N.Y. Feb. 19, 2013).) As noted by the <u>McKee</u> court, "the court in that case construed the plain terms of a different warranty." <u>McKee</u>, 376 F. Supp. 3d at 758.

Defendant claims that <u>Acedo v. DMAX Ltd.</u> supports their argument. (ECF No. 75-1 at

PageID 875–76; see also Acedo v. DMAX, Ltd., 2015 WL 12696176 (C.D. Cal. Nov. 13, 2015).) That court "did not consider an express warranty. Rather, it considered whether GM's 'alleged affirmative representations' about various truck features 'created an express warranty.'" McKee, 376 F. Supp. 3d at 759 (citing Acedo, 2015 WL 12696176, at *23). That court also did not "analyz[e] the full clause under this Court's consideration." Martell v. Gen. Motors LLC, 537 F. Supp. 3d 1192, 1204 n.6 (D. Or. 2021).

Finally, Defendant cites cases that parrot the assertion that some large number of courts have found that GM's New Vehicle Limited Warranty does not cover design defects, without actually analyzing the language of the warranty. See, e.g., Szep v. Gen. Motors LLC, 491 F. Supp. 3d 280, 291 (N.D. Ohio 2020) ("Several courts, including courts within this circuit, have held that this warranty language does not cover design defects"); Harris v. Gen. Motors LLC, No. C20-257 TSZ, 2020 WL 5231198, at *3 (W.D. Wash. Sept. 2, 2020) ("Courts interpreting language in similar warranties find that it only covers manufacturing warranties") (citing Sloan, 2017 WL 3283998, at *8), order vacated in part on reconsideration, No. C20-257 TSZ, 2020 WL 10692982 (W.D. Wash. Oct. 19, 2020); see also Martell, 537 F. Supp. 3d at 1204 ("The Court has not located any cases in which a court considered and analyzed the complete clause of the express warranty at issue here and found that it only covered defects in materials or workmanship.").

Courts interpreting the "repairs to correct any vehicle defect . . . due to materials or workmanship" language in this exact warranty have found that it covers both manufacturing and design defects. (ECF No. at PageID 941.) "GM's argument is inconsistent with the Warranty's plain language." McKee, 376 F. Supp. 3d at 757; see also Martell, 537 F. Supp. 3d at 1205 ("GM asks the Court instead to construct an entirely new meaning that is different from the one suggested by a plain reading of the clause itself and the warranty as a whole"); Hackler v. Gen. Motors LLC,

No. 221-CV-019, 2022 WL 270867, at *8 (S.D. Ga. Jan. 28, 2022) ("A plain reading of the warranty demonstrates that it covers . . . design defects."). "Plaintiff's reading reflects common sense notions of what an express warranty would likely cover when not otherwise limited by the text of that warranty." Martell, 537 F. Supp. 3d at 1203 (applying the series qualifier and *ejusdem generis* canons of construction in coming to its conclusion).

The opinions of other courts, most persuasively the McKee and Martell courts, have thoroughly analyzed and rejected GM's arguments that its New Vehicle Limited Warranty does not cover design defects. This Court concurs with the well-reasoned opinions in McKee and Martell. GM's assertions and citations to the contrary are rejected. This defect was covered by Defendant's New Vehicle Limited Warranty.

### c. *Plaintiff has submitted evidence sufficient to establish a dispute as to damages*

Defendant argues that Plaintiff "has not identified any damages caused by GM's conduct nor has she disclosed a damages computation as required by the Rules of Civil Procedure." (ECF No. 75-1 at PageID 878.)

Plaintiff counters that the expert opinion of Mr. Manzari set out a dollar figure for damages, which took the form of diminution of value of the Subject Vehicle and its cost to repair. (ECF No. 79 at PageID 1235; see also ECF No. 75-8.) Plaintiff also argues that she timely filed Mr. Manzari's expert report and responded to GM's interrogatory request, through which she set out her full damages claim. (See id. at PageID 1236–37.) Plaintiff further argues that she was not required to supplement this disclosure under Federal Rule of Civil Procedure 26 ("Rule 26"). (See id.; see also Fed. R. Civ. P. 26(e).) Plaintiff notes that Defendant also had the opportunity to take her deposition and that of Mr. Manzari regarding damages. (Id. at PageID 1237.)

There is, at minimum, a genuine dispute of material fact as to the presence and dollar value of damages when construing all inferences in favor of the Plaintiff. Robertson, 753 F.3d 606 at

614.  Defendant makes much of the fact that Plaintiff "testified that the trade-in value she received for the subject vehicle was acceptable."  (ECF No. 75-1; see also ECF No. 75-4 at PageID 918.)  However, Plaintiff also testified that she did not "get what [she] paid for."  (ECF No. 79-6 at PageID 1293.)  Mr. Manzari noted a loss of value in the Class Vehicles in his expert report.  (ECF No. 75-8 at PageID 1016.)  He also set out that it is his opinion that the cost to repair would be $700, and that this is an appropriate proxy for diminution in value.  (Id. at PageID 1016.)  "[T]he reasonable cost of repairs" is an appropriate measure of damages in a breach of contract and warranty case under Tennessee law.  Gibson v. McGlothlin, 1996 WL 506851, at *2 (Tenn. Ct. App. Sept. 9, 1996); see also GSB Contractors, Inc. v. Hess, 179 S.W.3d 535, 541–42 (Tenn. Ct. App. 2005) (noting that breach of contract damages are frequently measured as either cost of repair or difference in value).  Plaintiff has adequately and precisely set out her damages as required under Federal Rule of Civil Procedure 56.

Plaintiff does mention loss of use damages in her deposition.  (ECF No. 79 at PageID 1235.)  Mr. Manzari's report describes $700 as a proxy for "diminution in value" but not for loss of use.  (ECF No. 75-8 at PageID 1016.)  Plaintiff has not provided evidence as to any damage calculation or valuation of her loss of use of the subject vehicle.  Defendant also argues that Plaintiff's claim for loss of use damages is barred by the terms of her warranty.  (ECF No. 75-1 at PageID 879.)  Plaintiff therefore failed to document or testify to specific loss of use damages, and even construing her claim in the light most favorable to the Plaintiff, she has not set out sufficient evidence of loss of use damages.  Rachells 2012 WL 3648835, at *2 (quoting Lujan, 497 U.S. at 884).  Plaintiff's claims for loss of use damages, therefore, do not survive summary judgement.

Defendant's argument that Plaintiff failed to comply with Rule 26 is unavailing.  See Fed. R. Civ. P. 26(e).  Plaintiff set out her claim for the dollar amount of her damages and timely served

Defendant with the expert report that calculated those damages.  (ECF No. 75-8 at PageID 1016.)

Defendant deposed Mr. Manzari regarding the underpinnings of his damage calculation.  (ECF

No. 79-5 at PageID 1280–81.)

Defendant may dispute Plaintiff's damages calculation and methodology at trial.  Plaintiff,

however, has met the requirements of Federal Rule of Civil Procedure 56(c)(1) and set out

evidence creating a question of fact as to damages regarding the diminution of value of the subject

vehicle, although not for the loss of its use.  Summary judgment is therefore **GRANTED** as to loss

of use damages and **DENIED** as to diminution of value damages.

### d.  *Plaintiff's claims for injunctive relief may not go forward*

Defendant argues that Plaintiff filed her Motion for Class Certification "and does not seek

injunctive relief on behalf of the putative class" in that Motion.  (ECF No. 81 at PageID 1316.)

Defendant raises this argument for the first time in its Reply, and in general "arguments made to

us for the first time in a reply brief are waived."  Sanborn v. Parker, 629 F.3d 554, 579 (6th Cir.

2010) (citing Am. Trim, L.L.C. v. Oracle Corp., 383 F.3d 462, 477 (6th Cir.2004)); see also Wright

v. Holbrook, 794 F.2d 1152, 1156 (6th Cir. 1986) (explaining that such arguments are waived

because the opposing party has no opportunity to respond).  It is true that Defendant seeks class

certification as a damages class and not an injunctive class. (See ECF No. 62 at PageID 426; see

also Fed. R. Civ. P. 23(b)(2)–(3).)  The Court has the power to certify a "hybrid class," that is, a

class certified under both Fed. R. Civ. P. 23(b)(2) and 23(b)(3), in certain circumstances.  See

McDonald v. Franklin Cnty., Ohio, 306 F.R.D. 548, 560 (S.D. Ohio 2015) (citing Olden v. Lafarge

Corp., 383 F.3d 495, 511 (6th Cir.2004)).  While this issue has not been adequately briefed by

either Party, this is not an appropriate case for a hybrid class.  In re FCA US LLC Monostable

Elec. Gearshift Litig., 334 F.R.D. 96, 107–08 (E.D. Mich. 2019) (citing Dukes, 564 U.S. at 338)

(holding that Rule 23(b)(2) class certification was not appropriate in a case where a plaintiff sought

damages for faulty shifters in automobiles because individual monetary relief was not incidental to injunctive relief).

### e. *Summary Judgment Conclusion*

For the reasons set forth above, Summary Judgment is **GRANTED IN PART**. Summary Judgment is **GRANTED** as to Plaintiff's claims regarding loss of use damages and injunctive relief. Summary Judgment is **DENIED** as to Plaintiff's breach of contract and breach of express warranty claims, and Plaintiff may proceed under a diminution of value theory of damages.

## B. *Class Certification*

As the Court finds that Plaintiff's claims for class certification may proceed, the Court will examine Plaintiff's Motion for Class Certification. "Plaintiff seeks to certify a class of owners and lessees of Tennessee Vehicles who: (1) experienced the STP condition during the warranty term; (2) sought a repair for the STP condition from a GM dealer during the warranty term; and (3) were not provided a redesigned silicon-free part free at no cost during the warranty term." (ECF No. 76 at PageID 1061.) For the reasons set forth below, the Court **GRANTS** class certification, but modifies the class so that it is defined as follows: Initial purchasers and lessees of new "class vehicles," 2017-18 GMC Acadias, who purchased or leased their vehicles in Tennessee.

### a. *Rule 23(a) Requirements*

#### i. *Numerosity is satisfied*

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

Plaintiff contends that there are "at least hundreds if not thousands of members" in the class. (ECF No. 62-1 at PageID 447.) Plaintiff alleges that GM's data shows that 3,341 of the Class Vehicle have been sold in Tennessee, 1,351 of those vehicles have sought warranty repairs for the STP defect, and 784 vehicle owners have paid for repairs to the shifter assembly out of

pocket.  (ECF No. 63 at PageID 471–72.)

Defendant argues that Plaintiff has failed to consider "how many of the relatively low number of owners or lessees were actually harmed."  (ECF No. 76 at PageID 1068.)  Defendant also contends that Plaintiff calculated only the maximum number of class members, which is insufficient to show numerosity.  (Id.)

Plaintiff's proposed class satisfies numerosity.  As the Court has already noted, Plaintiff has sufficiently pled damages.  Supra Section III.A.c.  The Court has set out a class of approximately 3,341, more than sufficient to satisfy numerosity.  Snead v. CoreCivic of Tennessee, LLC, 2018 WL 3157283, at *12 (M.D. Tenn. June 27, 2018) (a class comprised of "several hundred" individuals is sufficiently numerous to render joinder impracticable).  A class action plaintiff need not plead an exact number of class members, but rather "must show some evidence of or reasonably estimate the number of class members." Grae v. Corrections Corp., 330 F.R.D. 481, 501 (M.D. Tenn. 2019).  However, "impracticability of joinder must be positively shown, and cannot be speculative." Golden v. City of Columbus, 404 F.3d 950, 966 (6th Cir. 2005).  Joinder has been positively shown to be impracticable in the instant case.  Id.

### ii.   Commonality is Satisfied

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).

Plaintiff contends that the class has numerous shared questions of law and fact, including

1. Whether the Class Vehicles suffered from a common defect in their shifter assemblies that cause their vehicles to fail to recognize the vehicles' transmission has been placed in park and prevent the vehicles from being shut off; 2. Whether GM's New Vehicle Limited Warranty constitutes an "express warranty" under Tennessee law; 3. Whether under GM's promise in its New Vehicle Limited warranty to "cover[ ] repairs to correct any vehicle defect," Class Vehicle owners are entitled to the replacement of defective shifter assemblies with silicon-free replacement parts; 4. Whether GM developed a repair for the common Shift to Park

Defect in a reasonable amount of time; 5. Whether GM's proposed repair attempts
. . . resolved and repaired the common defect; and 6. Whether members of the class
are entitled to damages as a result of GM's failure to repair the Class Vehicles'
common defect under GM's New Vehicle Limited Warranty.

(ECF No. 62-1 at PageID 447–48.)  Defendant offers no rejoinder.  (See generally ECF No. 76.)

Commonality is satisfied.  "The claims of all prospective class members involve the same alleged defect, [are] covered by the same warranty, and [are] found in vehicles of the same make and model."  Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010); see also Daffin v. Ford Motor Co., 458 F.3d at 552 (finding commonality was satisfied where issues of the scope of warranty coverage and the defective nature of a car part were common across a class).

### iii.   Typicality is Satisfied

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).

Plaintiff argues that typicality is satisfied because Class Vehicles were sold with "identical and materially defective shifter assemblies," and both she and the proposed class members "experienced consistent and uniform defects in their shifter assemblies."  (ECF No. 62-1 at PageID 449.)  Plaintiff alleges that she and class members also received the same warranty.  (Id.)

Defendant argues that Plaintiff's claim is not typical because she "faces unique defenses including whether she experienced and sought a repair for the STP condition and whether she can recover damages."  (ECF No. 76 at PageID 1069.)  Defendant also argues that no class representative "is a current lessee, former lessee or current owner."  Defendant posits that such proposed class members may have interests and remedies that differ from Plaintiff's interests and remedies.  (Id.)

Typicality is satisfied.  "A class representative must be part of the class and possess the

same interest and suffer the same injury as the class members." <u>Rutherford v. City of Cleveland</u>, 137 F.3d 905, 909 (6th Cir. 1998) (quoting <u>Anchem Prods., Inc. v. Windsor</u>, 521 U.S. 591 (1997)). "Defendant has not made the Court aware of any conflict of interest between the named Plaintiff[] and the proposed class members," failing to specify how the interests of lessees and owners, or current owners and former owners, could differ. <u>Grayer v. Kennametal Inc.</u>, No. 1:16CV1382, 2018 WL 3640996, at *7 (N.D. Ohio July 30, 2018). Plaintiff purchased the Subject Vehicle, a Class Vehicle, as did the proposed class members. Such vehicles allegedly harbored the same defect, and such vehicles were allegedly sold with identical warranties. (ECF No. 62-1 at PageID 449.) The argument that Plaintiff is not typical because she sold her vehicle has little merit, as she has still suffered the same injury as the proposed class members and possesses the same interest in recovery as the proposed class members. <u>See</u> <u>Banks v. Nissan N. Am., Inc.</u>, 301 F.R.D. 327, 334 (N.D. Cal. 2013) (plaintiffs typical even though "they sold their vehicles after filing this lawsuit.").

*iv.   Adequacy is Satisfied*

Rule 23(a)(4) requires that the representative parties demonstrate that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

Plaintiff argues that she is an adequate representative of the class because "she is situated in the same manner as the putative class members." (ECF No. 62-1 at PageID 450.) She contends that she "has no interests that are antagonistic to or conflicting with persons in the putative class and is well aware of her role and obligation as a class representative." (<u>Id.</u>) Finally, Plaintiff's counsel argue that they will responsibly represent the class and have experience representing members of a class. (<u>Id.</u> at PageID 449–50.)

Defendant counters that Plaintiff is not an adequate representative because she "lacks the

26

incentive of a damages recovery." (ECF No. 76 at PageID 1070.)  Defendant additionally contends that there are "multiple conflicts within the interests of the class" but names only one – that current and former owners would both be members of the proposed class.  (Id.)  Finally, Defendant argues that "Plaintiff has either ceded control of the litigation to her counsel or has insufficient memory to demonstrate control, either of which is disqualifying."  (Id.)

Defendant additionally argues that Plaintiff's counsel are not adequate representatives because they "did not make required damages disclosures."  (Id.) Defendant also contends that Plaintiff's counsel are not adequate representatives because they sought to represent a similar class in a case in a different district, where granted summary judgment in favor of Defendant.  (Id.)

Adequacy is satisfied.  Regarding the adequacy of the named representative, the Court has ruled that Defendant has adequately set out damages and is not precluded from damages recovery. Supra, Section III.A.c.  Additionally, Defendant relies on a few select statements from Plaintiff's deposition to argue that she has insufficient memory to demonstrate control of the litigation or has ceded control to her counsel.  (ECF No. 76 at PageID 1070.)  Plaintiff made other statements in her deposition which demonstrate adequate memory and control of the litigation.  (See, e.g., ECF No. 76-6 at PageID 1165 (discussing scope of the class during her deposition), ECF No. 76-6 at PageID 1145 (discussing the STP defect), ECF No. 75-4 at PageID 909 (discussing seeking warranty repairs.)  A "plaintiff's lack of knowledge and understanding of the case is insufficient to deny class certification unless [her] ignorance unduly impacts [her] ability to vigorously prosecute the action," and Plaintiff's "burden in demonstrating that the class representative meets this standard is not difficult."  Cassell v. Vanderbilt Univ., 2018 WL 5264640, at *5 (M.D. Tenn. Oct. 23, 2018) (quoting City of Goodlettsville v. Priceline.Com, Inc., 267 F.R.D. 523, 531 (M.D. Tenn. 2010)).

The Court finds merit in Defendant's argument that there is a conflict within the class "where former owners sold their vehicles to current owners, as both owners would be class members." (ECF No. 76 at PageID 1070.) The New Vehicle Limited Warranty covers both purchasers of new vehicles and subsequent owners. (ECF No. 75-6 at PageID 941.) The Court finds that these members are in conflict, as the alleged damages stem from the point of sale, at which point in time purchasers of new vehicles paid a premium price. In re Whirlpool Corp., 722 F.3d at 857. Subsequent owners may have purchased defective vehicles from those who purchased the vehicles originally from GM or GM's dealerships, but GM cannot be obligated to pay twice for a single vehicle. Any given Subject Vehicle did not suffer double the diminution in value merely because it passed between different orders. A district court has broad powers to modify the scope of a class. Powers v. Hamilton Cnty. Pub. Def. Comm'n, 501 F.3d 592, 619 (6th Cir. 2007). The Court therefore modifies the proposed class such that it only covers the initial purchasers or lessees of new vehicles, whether or not that individual remains a current owner or lessee.

Regarding the adequacy of representation, the Court found that Plaintiff's counsel sufficiently pled damages. Supra, Section III.A.c. That Plaintiff's counsel lost a single argument on the merits in a different court is of limited probative value in determining their ability to represent a class. The Court declines to find that Plaintiff's counsel is not qualified to represent a class because of an adverse ruling in a fellow district court. Plaintiff is an adequate representative of the proposed class, as is her counsel.

### b. *Rule 23(b)(3) Requirements*

#### i. *Predominance of common issues*

Rule 23(b)(3) requires that the Plaintiff show "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members."

Fed. R. Civ. P. 23(b)(3).

Plaintiff argues that common issues predominate because all class members received identical warranties from GM and the shifter assembly components of the Class Vehicles "are identical." (ECF No. 62-1 at PageID 450–51.) Plaintiff further explains that "[w]hether the shifter assemblies were defective, whether the defect reduces the value of the Class Vehicles, whether GM's limited warranty is an 'express warranty' under Tennessee law, and whether the uniform language in the limited warranty covers repairs for the common defect are all questions common to Class members that predominate over any individualized questions." (Id. at PageID 451.) Finally, Plaintiff contends that it will show that GM's failure to repair the shifter assembly violated GM's New Vehicle Limited Warranty "[t]hrough common evidence." (Id.)

Defendant counters that at least some members of the proposed class lack standing, as they do not have injuries that are fairly traceable to the alleged breach of the New Vehicle Limited Warranty. (ECF No. 76 at PageID 1063–64.) Defendant argues that experiencing the STP condition and seeking repair does not amount to a breach of the limited warranty, and receiving a repair that did not involve replacement of the shifter assembly with a silicon-free part does not establish harm. (Id. at PageID 1064.) Defendant argues that "[e]ach class member's claims will also require mini-trials on the merits" because whether a repair occurred within a reasonable period of time will be an issue of fact which will require individualized fact-finding. (Id. at PageID 1064–65.) Defendant states that "other individualized issues" will also require mini-trials but does not specify what other individualized issues might be present in the instant case. (Id. at PageID 1065.) Finally, Defendant argues that Plaintiff "fails to show how she will prove her own damages, let alone the damages of absent class members." (Id. at PageID 1067.)

Defendant's arguments are unavailing, and common issues predominate in the instant case.

Plaintiff's contention is that *no* Class Vehicle received a silicon-free repair within a reasonable period of time.  (ECF No. 80 at PageID 1299.)  Plaintiff additionally alleges that members of the proposed class were injured "at the point of sale upon paying a premium price" for a defective good.  In re Whirlpool Corp., 722 F.3d at 857; see also Cole v. Gen. Motors Corp., 484 F.3d 717, 722 (5th Cir. 2007) (holding that the plaintiffs suffered an injury-in-fact because they purchased cars with defective parts, which was in and of itself an economic loss); Raymo v. FCA US LLC, 475 F. Supp. 3d 680, 694 (E.D. Mich. 2020) ("a plaintiff who pays a premium for a product but does not receive the anticipated benefit demonstrates a cognizable injury in fact sufficient to establish Article III standing").  Plaintiff plausibly alleges that paying a premium price for a defective good damaged class members and specifies the amount of those damages.  Supra, Section III.A.c.  To the extent Defendant argues that unspecified additional issues may require individualized inquiry, common questions may predominate notwithstanding "individualized damages issues."  Fitzgerald v. P.L. Mktg., Inc., 2020 WL 3621250, at *7 (W.D. Tenn. July 2, 2020).

### ii.  Superiority is Satisfied

Rule 23(b)(3) requires that Plaintiff show "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

Plaintiff argues that "it is neither economically feasible, nor judicially efficient, for the hundreds or thousands of putative class members to pursue their claims against GM on an individual basis."  (ECF No. 62-1 at PageID 452.)  She contends that "relief may be provided to class members without the need for numerous separate trials on the same facts."  (Id.)

Defendant argues that Plaintiff's claims have manageability problems, and she has offered no realistic trial plan.  (ECF No. 76 at PageID 1071.)

Superiority is satisfied.  Defendant has not offered any convincing, specific argument that Plaintiff's proposed class creates manageability problems.  Plaintiff has adequately defined a damages calculation for the class and identified common questions of fact and law that will predominate.  "[L]itigation should be brought as a class action if individual suits would yield small recoveries."  <u>Beattie</u>, 511 F.3d at 567 (citing <u>Amchem</u>, 521 U.S. at 617).  Proceeding as a class action will be in the interest of judicial economy, will be economical for the Parties, and will promote uniformity of decision for a large number of similar claims for relatively small recovery amounts.

### iii.  Class is Ascertainable

Rule 23(b)(3) contains an implied ascertainability requirement that "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class."  <u>Young</u>, 693 F.3d at 537–38.

Plaintiff argues that her proposed "class can be reliably and feasibly identified through GM's own records and supplemental affidavits."  (ECF No. 62-1 at PageID 444.)  She contends that GM can query its records to determine the identities of all owners of Class Vehicles within a geographical area who complained about the STP defect and the date that they made their complaint, and also determine all repairs made on a given Class Vehicle.  (<u>Id.</u>)  Plaintiff argues that no Class Vehicle received a silicon-free replacement part before December of 2020.  (<u>Id.</u> at PageID 445.)

Defendant argues that "the administrative task of identifying members would require mini-trials on the merits of individuals' claims."  (ECF No. 76 at PageID 1078.)  "Class members cannot be identified by referencing GM's warranty data," Defendant avers, because such data is both underinclusive and overinclusive.  (<u>Id.</u> at PageID 1079.)

Before addressing the arguments that the Parties labeled as their ascertainability arguments, the Court must first address the issue of the "fail-safe class." Defendant contends that Plaintiff has proposed a "fail-safe class" by defining "the class in terms of success on the merits," shielding the class from adverse judgment. (ECF No. 76 at PageID 1065.) Defendant raises this issue with minimal briefing, defining a "fail-safe class" and alleging Plaintiff has set out a "fail-safe class" without further argument. (Id.) Plaintiff does not address the issue at all in Reply. (See generally ECF No. 80.) Additionally, Defendant raised the "fail-safe class" issue as a predominance issue when the issue goes to ascertainability. Oom v. Michaels Companies Inc., No. 1:16-CV-257, 2017 WL 3048540, at *4 (W.D. Mich. July 19, 2017) (citing Eager v. Credit Bureau Collection Servs., Inc., Nos. 1:13-cv-30, 1:13-cv-84, 1:13-cv-173, 1:13-cv-261, 2014 WL 3534949, at *3 (W.D. Mich. July 16, 2014)). Regardless, the Court understands Plaintiff to have proposed a "fail-safe class."

A "fail-safe class" is one that "cannot be defined until the case is resolved on its merits" and is therefore impermissible. Young, 693 F.3d at 538 (citing Randleman v. Fidelity Nat'l Title Ins. Co., 646 F.3d 347, 352 (6th Cir. 2011)). "Such a result is prohibited in large part because it would fail to provide the final resolution of the claims of all class members that is envisioned in class action litigation." Id.

Plaintiff, in limiting her proposed class to individuals who complained of the shifter defect and did not receive a replacement part, has defined the class such that "whether a person qualifies as a member depends on whether the person has a valid claim." Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012); see also Oom, 2017 WL 3048540, at *5 (explaining that a class made up of only purchasers of a product who did not receive the benefit of their bargain constituted a fail-safe class). If Plaintiff is "unsuccessful in meeting [her] burden of

proof," regarding her proposed class, "the class does not exist and the class is not bound by the judgment in favor of the Defendant." <u>Sauter v. CVS Pharmacy, Inc.</u>, No. 2:13-CV-846, 2014 WL 1814076, at *9 (S.D. Ohio May 7, 2014).

"Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." <u>Messner</u>, 669 F.3d at 825; <u>see also</u> <u>Powers</u>, 501 F.3d at 619.  In other litigation involving motor vehicles or car parts, classes are often defined as all purchasers, owners, or lessees of a certain model of vehicle, or all models of vehicles containing a certain part.  <u>See, e.g.</u>, <u>In re FCA US LLC Monostable Elec. Gearshift Litig.</u>, (defining a class in a defective car component action as "[a]ll persons or entities who currently own or lease a 'Class Vehicle' which means a 2012-2014 Dodge Charger, 2012-2014 Chrysler 300, or 2014 2015 Jeep Grand Cherokee which is equipped with the monostable shifter"); <u>Daffin</u>, 458 F.3d at 551 (defining a class in a defective car part action as "all Ohio residents who lease or own a model year 1999 or 2000 Villager that was bought or leased during the warranty period," with exceptions).  The Court therefore modifies the class to include purchasers and lessees of all 2017-18 GMC Acadias.

The proposed class is ascertainable.  Defendant has asserted that it knows and can identify purchasers and lessees of Subject Vehicles given that it "reach[es] out to owners for recalls." (ECF No. 76-2 at PageID 1099.)  "The proposed class is defined by objective criteria." <u>Rikos v. Procter & Gamble Co.</u>, 799 F.3d 497, 526 (6th Cir. 2015).  It is therefore ascertainable.

## IV.   CONCLUSION

For each of the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED IN PART**.  Summary Judgment is **GRANTED** as to Plaintiff's claims regarding loss

of use damages and injunctive relief.  Summary Judgment is **DENIED** as to Plaintiff's breach of contract and breach of express warranty claims, and Plaintiff may proceed under a diminution of value theory of damages.  Plaintiff's Motion for Class Certification is **GRANTED**, and the class is defined as follows: Initial purchasers and lessees of new "class vehicles," 2017-18 GMC Acadias, who purchased or leased their vehicles in Tennessee.

      **SO ORDERED**, this 11th day of May, 2023.

              /s/ Jon P. McCalla
              JON P. McCALLA
              UNITED STATES DISTRICT JUDGE