IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RILLA JEFFERSON, *on behalf of herself and all others similarly situated*, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GENERAL MOTORS, LLC, )<br>)<br>Defendant. ) | Case No. 2:20-cv-02576-JPM-tmp |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR APPROVAL OF PROPOSED CLASS NOTICE AND NOTICE PLAN, DENYING DEFENDANT'S REQUEST FOR A STAY, AND AMENDING THE THIRD AMENDED SCHEDULING ORDER**

Before the Court is the Plaintiff Rilla Jefferson ("Plaintiff" or "Ms. Jefferson") Motion for Approval of Proposed Class Notice and Notice Plan (the "Motion"), filed on October 20, 2023. (ECF No. 112.) Defendant General Motors, LLC ("GM" or "Defendant") filed a Response in Opposition on November 10, 2023. (ECF No. 113.) Plaintiff filed a Reply on November 22, 2023. (ECF No. 114.)

For the reasons set forth below, the Motion (ECF No. 112) is **GRANTED IN PART** and **DENIED IN PART**.

I.  **BACKGROUND**

   A.  Factual Background

      i.  *Undisputed Facts*

Plaintiff is an adult resident of Memphis, Tennessee. (ECF No. 75-2 ¶ 1; ECF No. 79-1 ¶ 1.) Defendant is a Delaware Corporation that markets, manufactures, sells, and provides a limited

warranty for motor vehicles, including the GMC Acadia.  (ECF No. 75-2 ¶¶ 2–3; ECF No. 79-1 ¶¶ 2–3.)  Plaintiff purchased a new 2017 GMC Acadia (the "Subject Vehicle") for $30,270 from Sunrise Buick (the "Dealership") in Bartlett, Tennessee on October 25, 2017.  (ECF No. 75-2 ¶¶ 4–5; ECF No. 79-1 ¶¶ 4–5.)

The Subject Vehicle was sold with GM's "New Vehicle Limited Warranty," providing "repair and replace" coverage for 3 years or 36,000 miles, whichever comes first.  (ECF No. 75-2 ¶ 7; ECF No. 79-1 ¶ 7.)  The text of the New Vehicle Limited Warranty is undisputed.  (ECF No. 75-2 ¶ 10; ECF No. 79-1 ¶ 10; see also ECF No. 75-6.)

Plaintiff alleges that she began to experience a Shift-to-Park ("STP") defect shortly after she purchased the subject vehicle.  (ECF No. 75-2 ¶ 12; ECF No. 79-1 ¶ 12.)  "Ms. Jefferson testified that when she put the Subject Vehicle in the park position and tried to turn the vehicle off, the Subject Vehicle would not turn off and a message appeared on the dashboard [that stated] 'Shift to Park' even though the vehicle was in the park position."  (ECF No. 75-2 ¶ 14; ECF No. 79-1 ¶ 14.)  When the STP defect manifested, the vehicle would not stop running.  (ECF No. 79-1 at PageID 1253–54; ECF No. 81-1 ¶ 5.)  "When Ms. Jefferson experienced the STP condition, she had to jiggle the shifter from park to neutral or drive and then put the shifter back in the park position."  (ECF No. 75-2 ¶ 15; ECF No. 79-1 ¶ 15.)  "The Subject Vehicle never rolled away [and] Ms. Jefferson was always able to start and turn off the Subject Vehicle."  (ECF No. 75-2 ¶ 18; ECF No. 79-1 ¶ 18.)  Plaintiff drove the Subject Vehicle regularly between the time when she purchased it and when she traded in the vehicle in February of 2021. (ECF No. 75-2 ¶ 19; ECF No. 79-1 ¶ 19.)  It is undisputed that Plaintiff testified that she complained to the Dealership about the STP defect, and that Repair Orders for the Subject Vehicle do not reflect these complaints.  (ECF No. 75-2 ¶¶ 20–21; ECF No. 79-1 ¶¶ 20–21.)

Plaintiff testified in her deposition that she presented the Subject Vehicle to GM dealers and described the STP defect, but GM and its dealers failed to repair the STP defect.[1] (ECF No. 79-1 at PageID 1254; ECF No. 81-1 ¶ 6.)

Plaintiff served Defendant with the Report and Expert Opinion of Darren Manzari on March 4, 2022. (ECF No. 75-2 ¶ 29; ECF No. 79-1 ¶ 29; see also ECF No. 75-8.) Mr. Manzari opined that nearly all 2017-18 GMC Acadia vehicles (the "Class Vehicles") have experienced or will experience the STP defect. (ECF No. 75-2 ¶ 32; ECF No. 79-1 ¶ 32.) Mr. Manzari is of the opinion that the cost of repairing the STP defect is $700, and that this is an appropriate proxy for measuring the diminished value of Class Vehicles stemming from the STP defect. (ECF No. 79-1 at PageID 1254; ECF No. 81-1 ¶ 9.)

### ii. Allegations

Plaintiff asserts that GM "is well aware of the [STP] defect." (ECF No. 1 ¶ 22.) She describes the defect as "a safety risk" as it can drain a car battery. (ECF No. 63 at PageID 470.) Plaintiff argues that the shifter is not an expected replacement part and should last the lifetime of a vehicle. (Id. at PageID 470–71.)

Plaintiff alleges that all class vehicles sold or leased were accompanied by Defendant's New Vehicle Limited Warranty. (Id. ¶ 28.) Plaintiff brings claims for breach of contract, breach of express warranty, and breach of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (Id. ¶ 5; see also ECF No. 27 (dismissing Plaintiff's claims for implied warranty and striking

---

[1] Defendant describes this fact as "Disputed" in its Response to Plaintiff's Statement of Additional Facts. (ECF No. 81-1 ¶ 6.) Plaintiff cites certain sections of the transcript of Rilla Jefferson as supporting her assertion that this is an undisputed fact. (ECF No. 79-1 at PageID 1254.) Defendant cites identical sections of the transcript of the deposition of Rilla Jefferson in arguing that this is a disputed fact. (ECF No. 81-1 ¶ 6.) The Court has interpreted Defendant's assertion that this fact is disputed as non-responsive, as Ms. Jefferson clearly asserts in the cited sections of her deposition that she informed the dealerships of the STP defect. (See, e.g., ECF No. 75-4 at PageID 921.) Defendant also described the fact that Plaintiff testified that she complained about the STP defect to the Dealership as undisputed in its own Statement of Undisputed Facts. (ECF No. 75-2 ¶ 20.)

Plaintiff's demand for punitive damages.))

Plaintiff alleges that GM's data shows that 3,341 of the Class Vehicle have been sold in Tennessee, 1,351 of those vehicles have sought warranty repairs for the STP defect, and 784 vehicle owners have paid for repairs to the shifter assembly out of pocket. (ECF No. 63 at PageID 471–72.) Plaintiff also alleges that those numbers will continue to increase over time because the STP Defect gets worse as an affected vehicle ages. (Id.)

### B. Procedural History

The Complaint in the instant case was filed in this Court on August 7, 2020. (ECF No. 1.) Defendant filed a Motion to Dismiss on October 29, 2020. (ECF No. 15.) The Court granted that Motion in part, striking Plaintiff's request for punitive damages and dismissing her implied warranty of merchantability claim. (ECF No. 27.) Defendant filed an Answer to Plaintiff's Complaint on October 18, 2021. (ECF No. 43.)

The Parties filed a Joint Motion to Stay the instant case on May 25, 2022. (ECF No. 51.) The Parties moved this Court to stay this case for 90 days, or until the resolution of the summary judgment and class certification motions which was then outstanding in Napoli-Bosse v. General Motors, LLC, No. 18-cv-1720-MPS (D. Conn). (Id. at PageID 390.) The motions in Napoli-Bosse were resolved on August 22, 2022. See Napoli-Bosse v. Gen. Motors LLC, No. 3:18-CV-1720 (MPS), 2022 WL 3585769 (D. Conn. Aug. 22, 2022). The Parties jointly moved the Court to lift the stay in the instant case on September 14, 2022. (ECF No. 54.) The Court granted the Parties' Joint Motion to Lift Stay on September 15, 2022. (ECF No. 55.)

Plaintiff filed a Motion to Certify Class on November 2, 2022. (ECF No. 62.) Defendant filed a Response on December 9, 2022. (ECF No. 76.) Plaintiff filed a Reply on January 10, 2023. (ECF No. 80.) On May 11, 2023, the Court granted Plaintiff's Motion to Certify Class. (ECF No.

90.) The Court defined the class as follows: Initial purchasers and lessees of new class vehicles, 2017-18 GMC Acadias, who purchased or leased their vehicles in Tennessee and who: (1) experienced the STP condition during the warranty term; (2) sought a repair for the STP condition from a GM dealer during the warranty term; and (3) were not provided a redesigned silicon-free part free at no cost during the warranty term." (Id. at PageID 1400.)

Defendant filed a Motion for Summary Judgment on November 22, 2022. (ECF No. 75.) Plaintiff filed a Response on January 10, 2023. (ECF No. 79.) Defendant filed a Reply on January 31, 2023. (ECF No. 81.) The Court granted Summary Judgment as to Plaintiff's claims regarding loss of use damages and injunctive relief and denied Summary Judgment as to Plaintiff's breach of contract and breach of express warranty claims. (ECF No. 90 at PageID 1410-1.) The Court further held that the Plaintiff was allowed to proceed under a diminution of value theory of damages. (Id. at PageID 1411.)

On May 26, 2023, Defendant filed a Motion for Reconsideration Regarding the Order on Class Certification and Summary Judgment Rulings (ECF No. 90). (ECF No. 93.) Plaintiff filed a Response on June 7, 2023. (ECF No. 96.) Defendant filed a Reply on June 11, 2023. (ECF No. 100.) On August 31, 2023, the Court entered an order modifying its previous ruling on class certification. (ECF No. 103.) The Court re-defined the class as follows: "(1) Initial purchasers and lessees of new 'class vehicles,' 2017-18 GMC Acadias, who purchased or leased their vehicles in Tennessee; and who (2) sought a repair from a GM dealer regarding the STP Issue during the warranty period; and who (3) were not provided with either a silicon-free replacement shifter assembly or silicon-free shifter control wire harness at no charge." (ECF No. at PageID 1514.)

Finally, on October 20, 2023 Plaintiff filed a Motion for Approval of Proposed Class Notice and Notice Plan. (ECF No. 112.) Defendant filed a Response on November 10, 2023.

5

(ECF No. 113.) Plaintiff filed a Reply on November 22, 2023. (ECF No. 114.) This Motion is now before the Court.

## II. LEGAL STANDARD

A Notice for a Class Action is evaluated under FRCP 23(c)(2)(B). See FED. R. CIV. P. 23(c)(2)(B). FRCP 23(c)(2)(B) requires, in relevant part, the following:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic mail, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Id.

"The purpose of notice in a class action is to 'afford members of the class due-process, which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment.'" In re Auto. Parts Antitrust Litig., 2016 WL 8200511, at *9 (E.D. Mich. Aug. 9, 2016) (quoting Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173-74 (1974)). Due process requires that the notice be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action'" and their rights. Does 1-2 v. Deja Vu Servs., Inc., 925 F.3d 886, 900 (6th Cir. 2019) (citing Vassalle v. Midland Funding LLC, 708 F.3d 747, 759 (6th Cir. 2013)).

## III.   ANALYSIS

Plaintiff proposes that "Notice will be provided by the Postcard, the Email Notice which will mirror the Postcard and through the Website (referenced in all forms of notice) which will contain the Long Form Notice." (ECF No. 112 at PageID 1533.) "JND Legal Administration [("JND")] will send the Postcard and Email Notice and receive correspondence." (Id. at PageID 1534.) JND will be further responsible for establishing a dedicated toll-free telephone number[2] and the website "which will contain (1) a copy of the Long Form Notice and present the information contained therein on a home screen, (2) case documents (e.g., the operative complaint, the answer and the Court's Orders on class certification), (3) the Request for Exclusion Form which can be submitted online or in a hard copy format; (4) the date, time and location of the trial; and (5) contact information." (Id.)

Plaintiff proposes that the Notice "will be sent directly to individual class members with the goal of reaching the most members that it is reasonably practical to reach." (Id. at PageID 1535.) Plaintiff plans to send the Postcard via direct mail to all "current and previous owners of Class Vehicles,"[3] by using VIN numbers to obtain information regarding those vehicles and narrowing notifications "to those individuals who purchased or leased the vehicle new." (Id.) JND will use the National Change of Address ("NCOA") to ensure Postcards are emailed to the most up-to-date addresses for identified individuals and "will track all notices returned undeliverable by the USPS" and take appropriate action to re-mail those notices. (Id.)

Plaintiff will also send an Email Notice via email addresses, which JND will identify by utilizing skip tracing tools. (Id. at PageID 1536.) "Following the dissemination of the notice,

---

[2] This phone number will be used by class members to "obtain information about the action." (ECF No. 112 at PageID 1534.)
[3] This includes sending notice to the 3,341 initial purchasers and lessees of the Tennessee Class Vehicles, a subset of which will qualify as class members. (Id. at PageID 1535.)

7

Plaintiff proposes that class members have sixty (60) days within which to request exclusion from the class. "Sixty days provides members ample time to gain knowledge, evaluate their rights and exclude themselves if they so choose." (Id. at PageID 1538.)

### A. Evaluating Proposed Class Notice

Plaintiff argues that "notice by mail and email are appropriate means of direct notice to inform class members of their rights and provide information about the case." (Id. at PageID 1536.) Plaintiffs further argue that individual notice to an initial Tennessee purchasers and lessees subgroup of the 3,341 Class Vehicles, assures that the "group contains the complete universe of class members," while acknowledging that the group might be broader than the class definition. (Id.) Plaintiff argues that this is the best notice practicable under the circumstances, given that Defendants "failed to repair the defect for years, [and] failed to document every instance where people, like Plaintiff, complained about the shifter defect and sought repair." (Id. at PageID 1536-7.) Thus, the group that could be identified through Defendant's records would be underinclusive. (Id. at PageID 1537.) Plaintiff then proposes that following entrance of judgment in the instant case "there will be a claims process where, *inter alia*, class members whose requests for warranty repairs are not reflected in GM's records will have an opportunity to submit proof that they are entitled to a damages award[], including via affidavits." (Id. at PageID 1538.)

In the Response, Defendant argues that Plaintiff's Proposed Notice Plan is overbroad, because it "ignores that the Court did not certify an all-owners class." (ECF No. 113 at PageID 1563-4.) Defendant objects to the proposed notice "because it is broader than necessary to notify actual class members, and will end up giving notice to many non-class members." (Id. at PageID 1564.) Defendant argues that at most 63% of Tennessee Class Vehicles experienced the STP issue, however, fails to provide an alternative way to identify class members without being

8

underinclusive. (Id.) Defendant also objects to Plaintiff's proposal to identify class members after trial, arguing that this shows that the "class is not ascertainable and individual factual questions predominate." (Id. at PageID 1565.) Defendant argues that Plaintiff should be required to propose a process which identifies class members now, arguing that to do otherwise would be inconsistent with Defendant's Due Process rights and the Rules Enabling Act.[4] Defendant further argues, without providing any support, that they have "a right to challenge each class member's claims of manifestation and presentment." (Id.)

In the Reply, Plaintiff argues that "[s]ending notice to the 3,341 initial purchasers and lessees of the Tennessee Class Vehicles is the 'best notice that is practicable under the circumstances.'" (ECF No. 114 at PageID 1571 (citing FED R. CIV. P. 23(c)(2)(B)).) Plaintiff argues that Defendant's failure to provide repairs and document every owner that presented for repair, like the Plaintiff, is the reason why a broader notice is required, to "ensure all class members are provided notice of this class action and an opportunity to exclude themselves." (Id.) Plaintiff argues that if "the jury finds for Plaintiff and the Class, a post-trial claims administration should be used to apportion damages[,]" and that such approach is consistent with cases across different circuits. (Id. at PageID 1573-5.)

The post card, email, and the long form notice via website fulfill the requirements of FRCP

---

[4] Defendant argues that it "must be allowed to challenge each class member's claim and present defenses as it would if each claim was tried individually" (ECF No. 113 at PageID 1565 (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997); 28 U.S.C. § 2072(b)). Amchem states that "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with The Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right." Amchem Prods., Inc., 521 U.S. at 613. This citation addresses whether class certification is dispositive and urges the Courts to be mindful of extending their subject matter jurisdiction. Id. Furthermore, Amchem decision pertains to settlement-only class certification and does in any way address the situation at hand. Id. Neither Amchem nor 28 U.S.C. § 2072(b) stand for the proposition put forward by Defendant that they must be allowed to challenge each class member's claim and present defenses, they simply state that procedure and evidence rules should not enlarge any substantive right. The goal of certifying a class is to have a Plaintiff that represents all members of the class and puts forward a case that represents all class members. Thus, the claims and defenses put forward by the representative Plaintiff assure Defendant of not having to relitigate the case against each individual class member.

23(c)(2)(B) as they contain clear, concise, plain and easily understood language regarding the nature of the action, the definition of the class certified, the class claims, issues, or defenses, that a class member may enter an appearance through an attorney if the member so desires, that the court will exclude from the class any member who requests exclusion, the time and manner for requesting exclusion, and the binding effect of a class judgment on members under Rule 23(c)(3). (See ECF Nos. 112-1 (Postcard), 112-2 (Long Form Notice), and 112-3 (Exclusion Request Form)); Fitzgerald v. P.L. Mktg., Inc., 2020 WL 7764969, at *14 (W.D. Tenn. Feb. 13, 2020) (approving distributing class notice by mail and email).

Further, the Court holds that sending out notice to all initial Tennessee purchasers and lessees of the 3,341 Class Vehicles based on the VINs is not overbroad, under the specific circumstances of this case. Given Defendant's own failure to document every owner of the Class Vehicle that presented for a repair of the STP defect, there is no other way to ensure that the notified group contains the complete universe of class members. Bowerman v. Field Asset Servs., Inc., 2015 WL 5569061, at *4 (N.D. Cal. Sept. 21, 2015) ("the best notice practicable under the circumstances [is] notice to a group that [is] broader than the class definition but include[s] the complete universe of class members.")

The Court also holds that the post-trial claims process to apportion damages is appropriate under FRCP 23. "Rule 23 specifically contemplates the need for . . . individualized claim determinations after a finding of liability." Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1131 (9th Cir. 2017) (citing FED. R. CIV. P. 23 advisory committee's note to 1966 amendment ("(explaining that certification may be proper "despite the need, if liability is found, for separate determinations of the damages suffered by individuals within the class"))). Defendant argues without any support that "Plaintiff should be required to propose a process whereby class members

10

are identified now." (ECF No. 113 at PageID 1565.)  Courts across different Circuits have held, however, that "determination of class membership and protecting the defendant's due process rights can be done during the claims administration process."  See e.g., Victorino v. FCA US LLC, 2020 WL 2306609, at *4 (S.D. Cal. May 8, 2020); see also Lyngaas v. Curaden AG, 2019 WL 6210690, at *16–18 (E.D. Mich. Nov. 21, 2019), aff'd sub nom. Lyngaas v. Curaden AG, 992 F.3d 412 (6th Cir. 2021) (ordering post-trial claims administration process to determine class membership).

The Court holds that Plaintiff's plan to provide notice to the certified class is approved, and thus the Motion at issue is **GRANTED IN PART**.

## B. Defendants' Production of Class Vehicle Purchasers and Lessees' Names, Mailing Addresses, and Email Addresses

Plaintiff argues that Defendant "should be required to produce Class Vehicle purchasers and lessees' names, mailing addresses and email addresses[,]" in addition to VINs associated with the Class Vehicles.  (ECF No. 112 at PageID 1538.)  Plaintiff asserts that Defendant should be ordered to produce this information "so that JND can supplement the information it obtains from third-party sources and 'cross-check with [GM's] data and use it to fill any holes.'"  (Id. at PageID 1539 (citing Weidman v. Ford Motor Co., 2022 WL 1658777, at *2 (E.D. Mich. May 25, 2022).)

In the Response Defendant argues that JND has previously advised the Court that their standard process for identifying such information is considered "'particularly reliable.'" (ECF No. 113 at PageID 1566 (citing ECF No. 112-4 ¶¶ 6, 8).)  Defendant argues that such a production "improperly shifts the burden and cost of providing class notice to GM." (Id. (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 361 (1978) ("we caution that courts should not stray too far from the principle underlying Eisen IV that the representative plaintiff should bear all costs relating

11

to the sending of notice because it is he who seeks to maintain the suit as a class action")).) Finally, Defendant argues that because "[e]very vehicle owner must register with the state's department of motor vehicles ("DMVs") . . . DMVs are the best source of identifying class members." (Id.)

In the Reply, Plaintiff argues that Defendant fails to identify "any burden in producing the requested information." (ECF No. 114 at PageID 1575.)

Because Defendant "sells vehicles at wholesale to independent dealers, who then sell those vehicles to retail buyers[,]" at least some of the requested information might not be easily available to Defendant. As such ordering the Defendant to produce this information would improperly shift the burden of class notice to the Defendant. Furthermore, Plaintiffs own filings, indicate that JND should be able to use "skip tracing tools to identify email addresses by which the potential Class Members may be reached." (ECF No. 112 at PageID 1536; see also ECF No. 112-4.)

The Court holds that Defendant is not required to produce Class Vehicle purchasers and lessees' names, mailing addresses and email addresses and thus the Motion at issue is **DENIED IN PART**. The Defendant is, however, required to provide the VIN numbers to the Plaintiff so they can move forward with the notice process.

### C. Stay of the Case

In its Response Defendant argues that a stay should be instituted in the instant case pending the appeal of class certification ruling under FRCP 23(f)[5], because the Sixth Circuit has "recently granted Rule 23(f) petitions on similar grounds in two autodefect class actions."[6] (ECF No. 113 at PageID 1567); In re General Motors, LLC, Sixth Circuit Case No. 23-0509. Defendant argues

---

[5] Defendant sought permission to appeal in the instant case on the following grounds: "(1) GM contends that the class certification ruling is based on a legally invalid theory of liability asserted by the Plaintiff; (2) the class definition and claims require individual fact-finding; (3) factual differences among class members' experiences preclude predominance; and (4) Plaintiff failed to provide a model for determining classwide damages." (ECF No. 112 at PageID 1567.)

[6] The Sixth Circuit has recently granted permissions to appeal in (1) In re General Motors, LLC, Sixth Circuit Case No. 23-0104; and (2) In re Nissan N. America, Inc., Sixth Circuit Case No. 23-0501.

that "[g]iven the overlap with the issues [between the cases taken up by the Sixth Circuit and] GM's Rule 23(f) petition to appeal in this case . . . it is appropriate that this matter be stayed and await the Court of Appeals' decisional guidance on the issues that are relevant in those two other cases as well as in this matter."  (Id. at PageID 1568.)

In the Response Plaintiff argues that Defendants "citation to other cases where petitions for permission to appeal were granted do not counsel [in favor of a stay] as those cases were much broader, involved multiple classes, hundreds of thousands of class vehicles comprised of different makes and models where the defendants argued there was no uniform common defect, different claims than those presented here, and different argument for appeal." (ECF No. 114 at PageID 1575.)

As this Court has previously stated in its denial of Defendant's request to stay the case pending the permission to appeal "further delay has the potential to harm Plaintiffs and the public interest" and "[e]ven if Defendant's petition is granted, class confusion is unlikely."  (ECF No. 111 at PageID 1528-9.)  The instant case is easily differentiated from the two cases in which the Sixth Circuit has granted appeal.  For example, In re General Motors, LLC, involves the certification of "26 state classes covering 800,000 vehicles that span 44 different vehicle model/model year ('MY') combinations" where GM made different "improvements" to different Class Vehicles at different times and claimed the transmission were "built and perform differently."  In re General Motors, LLC, Sixth Circuit Case No. 23-0104, ECF No. 1-2 at Page 11, 13, 23.  The case also involves several claims under multiple state laws not at issue in the instant case.  Id. at Page 25.

Defendant argues that "at least one district court has already stayed its consideration of class certification briefing in an auto-defect class action pending decision in the two appeals."

13

(ECF No. 113 at PageID 1568 (citing In re General Motors Corp. Air Conditioning Marketing and Sales Practices Litig., E.D. Mich. Case No. 18-md-02818, ECF No. 197).) Plaintiff, however, notes that the same district court declined GM's motion to stay where GM cited to the same two granted petitions as in the instant case. (ECF No. 114 at PageID 1575 (citing Chapman v. General Motors, LLC, 2023 WL 8007337, at *3 (E.D. Mich. Nov. 17, 2023).) The decision to grant a stay is highly fact intensive, and as this Court noted in its previous ruling denying Defendants Motion to Stay "[i]t is unclear what confusion might result from class members receiving a corrective notice requiring class certification." Lyngass v. Curaden AG, 2019 WL 2635966 at *2 (E.D. Mich. June 27, 2019).

For the foregoing reasons the Court once again holds that Defendants request to stay the case is **DENIED**.

### D. Amendments to the Third Amended Scheduling Order

The Third (Current) Amended Scheduling Order sets out the dates of January 2024 through April 2024 for the class administrator to perform the notice process, with a May 6th, 2024 date for report of results to the Court. Given that this Order will be entered in mid-March, the Third Amended Scheduling Order deadlines are amended as follows:

**CLASS ADMINISTRATOR - OBTAIN ADDRESSES, CREATE WEBSITE, MAIL NOTICE, 60 DAY NOTICE PERIOD AND RECEIVE OPT OUTS**: April – July 2024

**REPORT TO COURT RESULTS OF NOTICE:** August 5, 2024

**TRIAL**:

1. The **joint proposed pretrial order, proposed verdict form, proposed jury instructions, proposed voir dire questions, and motions in limine** are due by no later than 4:30 p.m. on September 13, 2024.

2. A **pretrial conference** is set for Friday, October 4, 2024 at 9:30 a.m.

3.         The **jury trial** in this matter, which is anticipated to last 7–10 days, is set to begin on October 21, 2024 at 9:30 a.m. in a courtroom to be designated by the District Court courtroom sharing plan.

## IV.    CONCLUSION

For each of the reasons set forth above, Plaintiff's Motion for Approval of Proposed Class Notice and Notice Plan is **GRANTED IN PART and DENIED IN PART**. Plaintiff's Motion is **GRANTED** as to the Notice and Notice Plan but **DENIED** as to the request to order Defendant to produce additional Class Member information. Defendant's renewed request for a stay is **DENIED**. The Court also **AMENDS** the Third Amended Schedule as outlined above.

**IT IS SO ORDERED**, this 13th day of March, 2024.

                                          /s/ Jon P. McCalla
                                          JON P. McCALLA
                                          UNITED STATES DISTRICT JUDGE